JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**

COURTNEY COFFMAN

**DEFENDANTS**

GRAND VIEW HOSPITAL D/B/A GRAND VIEW HEALTH; GRAND VIEW HEALTH FOUNDATION; DOUGLAS HUGHES

**(b)** County of Residence of First Listed Plaintiff          Chester
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant          Bucks
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Kevin Console, Esq., Console Mattiacci Law, 1525 Locust Street, 9th Fl., Philadelphia, PA 19102 215-545-7676

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [X] 3  Federal Question *(U.S. Government Not a Party)*
- [ ] 2  U.S. Government Defendant
- [ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*                  Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | **LABOR** | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | | | [ ] 751 Family and Medical Leave Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | | | [ ] 790 Other Labor Litigation | [ ] 862 Black Lung (923) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | [ ] 865 RSI (405(g)) | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [X] 442 Employment | [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

- [X] 1  Original Proceeding
- [ ] 2  Removed from State Court
- [ ] 3  Remanded from Appellate Court
- [ ] 4  Reinstated or Reopened
- [ ] 5  Transferred from Another District *(specify)*
- [ ] 6  Multidistrict Litigation - Transfer
- [ ] 8  Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 2000e, et seq., 42 U.S.C § 1981 ("1981"), 43 P.S. §951, et seq.

Brief description of cause:
Plaintiff was discriminated and retaliated against based on her sex in violation of state and federal law.

**VII. REQUESTED IN COMPLAINT:**

[ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
In excess of $75,000

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [X] Yes  [ ] No

**VIII. RELATED CASE(S) IF ANY**    *(See instructions):*

JUDGE _____    DOCKET NUMBER _____

DATE    05/31/2023

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

<u>**CASE MANAGEMENT TRACK DESIGNATION FORM**</u>

Courtney Coffman                                    :                    CIVIL ACTION
                                                              :
                                v.                        :
                                                              :
Grand View Hospital d/b/a Grand View Health, et al. :          NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.            ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                            ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                                                      ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)                                                                                          ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.       ( X)


05/31/2023                                                              Plaintiff, Courtney Coffman
_____            _____            _____
**Date**                                    **Attorney-at-law**                    **Attorney for**

215-545-7676                      215-689-4137                      kevinconsole@consolelaw.com
_____            _____            _____

**Telephone**                          **FAX Number**                      **E-Mail Address**


(Civ. 660) 10/02

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

## DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____Malvern, PA 19335_____

Address of Defendant: _____700 Lawn Avenue Sellersville, PA 18960_____

Place of Accident, Incident or Transaction: _____Malvern, PA and Sellersville, PA_____

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?     Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?     Yes ☐   No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?     Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?     Yes ☐   No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: __05/31/2023__     _____     __317235__
                                   *Attorney-at-Law / Pro Se Plaintiff*          *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.**    *Federal Question Cases:*                       **B.**    *Diversity Jurisdiction Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts      ☐ 1. Insurance Contract and Other Contracts
☐ 2. FELA      ☐ 2. Airplane Personal Injury
☐ 3. Jones Act-Personal Injury      ☐ 3. Assault, Defamation
☐ 4. Antitrust      ☐ 4. Marine Personal Injury
☐ 5. Patent      ☐ 5. Motor Vehicle Personal Injury
☐ 6. Labor-Management Relations      ☐ 6. Other Personal Injury *(Please specify):* _____
☑ 7. Civil Rights      ☐ 7. Products Liability
☐ 8. Habeas Corpus      ☐ 8. Products Liability – Asbestos
☐ 9. Securities Act(s) Cases      ☐ 9. All other Diversity Cases
☐ 10. Social Security Review Cases            *(Please specify):* _____
☐ 11. All other Federal Question Cases
     *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____Kevin Console_____, counsel of record *or* pro se plaintiff, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☑ Relief other than monetary is sought.

DATE: __05/31/2023__     _____     __317235__
                                     *Attorney-at-Law / Pro Se Plaintiff*          *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **COURTNEY COFFMAN**<br>Malvern, PA 19355<br><div align="right">*Plaintiff,*</div><br>v.<br><br>**GRAND VIEW HOSPITAL D/B/A<br>GRAND VIEW HEALTH**<br>700 Lawn Avenue<br>Sellersville, PA 18960<br><br>and<br><br>**GRAND VIEW HEALTH FOUNDATION,<br>LLC**<br>700 Lawn Avenue<br>Sellersville, PA 18960<br><div align="right">*Defendants.*</div> | **CIVIL ACTION NO.**<br><br><br><br>**JURY TRIAL DEMANDED** |

<u>**COMPLAINT**</u>

## I. <u>INTRODUCTION</u>

Plaintiff, Courtney Coffman ("Plaintiff"), brings this action against her former employers, Grand View Hospital d/b/a Grand View Health and Grand View Health Foundation, LLC (collectively "Defendants") for discriminating against Plaintiff because of her sex and for retaliating against Plaintiff because of her complaints of discrimination, culminating in the termination of Plaintiff's employment for false and pretextual reasons.

Defendants' conduct is violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Civil Rights Act of 1866, as amended, 42 U.S.C § 1981 ("1981"), and the Pennsylvania Human Relations Act, as amended, 43 P.S. §951, *et seq.* ("PHRA"). Plaintiff seeks all damages to which she is entitled, including economic loss,

compensatory damages, punitive damages, attorneys' fees and costs, and all other relief this Court deems appropriate.

II.    **PARTIES**

1.    Plaintiff, Courtney Coffman, is an individual and citizen of Pennsylvania. She resides in Malvern, Pennsylvania.

2.    Plaintiff is female.

3.    Defendant, Grand View Hospital (d/b/a Grand View Health), is a private institution with a principal place of business located at 700 Lawn Avenue, Sellersville, PA 18960.

4.    Defendant Grand View Health Foundation, LLC is the "parent" corporation of Grand View Hospital.

5.    Defendant Grand View Health Foundation, LLC owns and operates Defendant Grand View Hospital.

6.    Defendant Grand View Health Foundation, LLC likewise has a principal place of business located at 700 Lawn Avenue, Sellersville, PA 18960.

7.    Defendant Grand View Hospital is engaged in an industry affecting interstate commerce and regularly conducts business in the Commonwealth of Pennsylvania.

8.    Defendant Grand View Health Foundation, LLC is engaged in an industry affecting interstate commerce and regularly conducts business in the Commonwealth of Pennsylvania.

9.    Defendants, Grand View Health Foundation, LLC and Grand View Hospital, collectively maintain and operate offices located in Pennsylvania, including within the Eastern District of Pennsylvania judicial district.

10.    Defendant Grand View Health Foundation, LLC shares with Defendant Grand View Hospital, *inter alia*, common ownership, telephone numbers, websites, office locations,

personnel policies and employment practices.

11.    Defendants hold themselves out to the public as a single entity and/or company.

12.    Defendants are interconnected such that they are considered a "single" and/or "integrated" employer and/or enterprise. Defendants collectively caused the unlawful actions complained of herein.

13.    At all relevant times, Plaintiff primarily worked for Defendants in-person and remotely from her home office in Malvern, PA.

14.    Over the course of her employment with Defendants, Plaintiff had responsibilities to both Grand View Hospital and Grand View Health Foundation, LLC.

15.    At all relevant times, Defendants acted by and through their authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with Defendants and in furtherance of Defendants' business.

16.    At all relevant times, Defendants employed fifteen (15) or more employees.

17.    At all relevant times, Defendants acted as an "employer" within the meaning of the statutes forming the basis of this matter.

18.    At all relevant times, Plaintiff was an "employee" of Defendants within the meaning of the statutes forming the basis of this matter.

**III.    JURISDICTION AND VENUE**

19.    The causes of action forming the basis of this matter arise under Title VII, Section 1981 and the PHRA.

20.    The District Court has jurisdiction over Count I (Title VII) pursuant to 42 U.S.C. §2000e-5 and 28 U.S.C. §1331.

21.    The District Court has jurisdiction over Count II (Section 1981) pursuant to 42

U.S.C. §1981 and 28 U.S.C. § 1331.

22.     The District Court has supplemental jurisdiction over Count III (PHRA) pursuant to 28 U.S.C. §1367.

23.     Venue is proper in the District Court under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred within this District.

24.     On or about February 28, 2022, Plaintiff filed a Complaint with the Pennsylvania Human Relations Commission ("PHRC") complaining of the acts of discrimination and retaliation alleged herein. This Charge was cross-filed with the Equal Employment Opportunity Commission ("EEOC"). Attached hereto, incorporated herein, and marked as "Exhibit 1" is a true and correct copy of that PHRC Complaint (with personal identifying information redacted).

25.     On or about March 8, 2023, the EEOC issued to Plaintiff a Notice of Right to Sue. Attached hereto, incorporated herein, and marked as "Exhibit 2" is a true and correct copy of that Notice (with personal identifying information redacted).

26.     Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

## IV.     FACTUAL ALLEGATIONS

27.     Plaintiff began working at Defendants on or about February 27, 2020.

28.     Plaintiff consistently performed her job duties in a highly competent manner and received positive feedback.

29.     Plaintiff last held the position of Vice President and Chief Financial Officer.

30.     Plaintiff last reported to Douglas Hughes (male), then Interim President and Chief Executive Officer.

31.     Before reporting to Hughes, Plaintiff reported to Jean Keeler (female), President

and Chief Executive Officer.

32.    Keeler was responsible for hiring Plaintiff.

33.    In January 2020, during Plaintiff's hiring process, Hughes did not attend Plaintiff's first interview with Defendants.

34.    Although Hughes attended Plaintiff's second interview with Defendants, he told Plaintiff that he had no questions for her and no interest in interviewing her.

35.    After Plaintiff was hired, she was told that Hughes wanted the male candidate to be hired instead of her.

36.    Plaintiff was told that Hughes and Robert Pritchard (male), Board of Trustees Chair, were upset that she was hired.

37.    In or around January 2021, Mary Ann Poatsy (female), the Chair of Finance on Defendants' Board of Trustees and the only woman on Defendants' Finance Committee, was removed from her Chair of Finance role and replaced by Blair Rush (male).

38.    In or around July 2021, Poatsy was removed from the Finance Committee and the Board of Trustees altogether.

39.    Poatsy's seat on the Finance Committee was replaced by Walter Cressman (male).

40.    In or around July 2021, following the above, Rush told Plaintiff that Pritchard asked him if he thought she could smile and accept whatever was given or if she should be removed from a call related to her job duties.

41.    In or around September 2021, Plaintiff received a positive performance review from Keeler.

42.    On or about September 30, 2021, Keeler (female) was pushed out of her position of President and Chief Executive Officer of Defendants.

43.     On or about October 1, 2021, Plaintiff began reporting to Hughes.

44.     Hughes and Pritchard treated Plaintiff in a hostile, demeaning, and dismissive manner, differently and worse than male employees were treated.

45.     Plaintiff was blamed for things outside of her control.

46.     Plaintiff was not provided information relevant and necessary to perform her job duties and responsibilities.

47.     When Plaintiff disagreed with Hughes, he referred to Plaintiff as "aggressive."

48.     Hughes circumvented Plaintiff and contacted Christopher Mazzie (male), Finance Director, instead of Plaintiff, for issues that should have been directed to Plaintiff.

49.     Hughes did not treat male employees in this same or similar manner.

50.     On or about October 7, 2021, during a ribbon-cutting ceremony for one of Defendants' new locations, Hughes invited only male leadership members, including Bill Bingaman (male), Senior Director of Materials Management, one of Plaintiff's direct reports, to cut the ribbon and be part of the photograph, while excluding the female leadership employees, including Plaintiff, who were present at the event.

51.     On or about October 25, 2021, in a meeting with Hughes, after Plaintiff had heard that Defendants planned to invite Joe Conklin (male) to present a comedy routine at Defendants' upcoming Board Retreat, Plaintiff complained that Conklin's presentation would be inappropriate for the workplace due to his sex and race discriminatory statements.

52.     In response to Plaintiff's complaints, Hughes stated that Conklin's routine was what Pritchard wanted at the Board Retreat.

53.     During that same meeting, Hughes told Plaintiff that she was no longer allowed to work remotely with the same frequency as she had been when she was reporting to Keeler.

54.    During that same meeting, Hughes told Plaintiff that he had been tracking her physical location and tracking the number of days she was in the office.

55.    Plaintiff asked Hughes how he had been tracking her location, but he refused to tell her.

56.    Following the above, in a meeting with Jan Rossi (female), Vice President of Human Resources, Plaintiff complained of sex discrimination in connection with Hughes' behavior.

57.    Plaintiff explained to Rossi that Hughes told her that he had been tracking her physical location and tracking the number of days she was in the office.

58.    Plaintiff explained to Rossi that it appeared that Hughes was engaging in this behavior in order to force Plaintiff out because he did not like women, especially women who stood up to him, like herself.

59.    Rossi agreed that Hughes dislikes strong women and that he was also treating Rossi poorly.

60.    Defendants failed to investigate Plaintiff's sex discrimination complaints.

61.    Defendants failed to remedy or correct the sex discrimination about which Plaintiff complained.

62.    Defendants failed to take appropriate steps to protect Plaintiff from retaliation as a result of her complaints of discrimination.

63.    On or about November 11, 2021, during an Executive Team Meeting, Plaintiff objected to the proposal to invite Conklin to the upcoming Board Retreat, due to his sex and race bias.

64.    During that same meeting, Rossi asked if Hughes had any discussions with Conklin,

instructing Conklin to keep his routine "clean." Hughes responded that he was not worried, and that it was what Pritchard wanted.

65.    On or about November 12, 2021, during Defendants' Board Retreat, Pritchard and Hughes scheduled a "surprise guest," Joe Conklin.

66.    During Conklin's presentation at the Board Retreat, Conklin engaged in sexist and racist comments and conduct.

67.    On November 13, 2021, Rush told Plaintiff that he heard from Hughes that Plaintiff was unhappy at Defendants.

68.    Plaintiff responded by explaining to Rush that she was not unhappy at Defendants.

69.    On or about November 18, 2021, during an Executive Meeting led by Hughes and attended by Rossi, Jane Ferry (female), Chief Medical Officer, Cindy Westphal (female), Chief Nursing Officer, Michael Prasto (male), Assistant Chief Medical Officer, Mark Horne (male), Senior Vice President and Chief Operating Officer, Keith Hammerschmidt (male), Executive Director of the Integrated Delivery Network, Wendy Kaiser (female), Director of Marketing, Renee Acconciamessa (female), Vice President of Physician Practices, and Jane Loveless (female), Vice President and Chief Information Officer, Plaintiff complained of sex and race discrimination in connection with Conklin's presentation at Defendants' Board Retreat.

70.    More specifically, Plaintiff complained that the presentation was sexist and racist, was offensive and made her feel uncomfortable, and created a hostile work environment that made women and minorities feel unwelcomed.

71.    Rossi, Ferry, and Westphal agreed during the meeting, and stated that the presentation was inappropriate for the workplace.

72.    Plaintiff stated that she thought a joint statement from Hughes and the Board should

be sent out to all Retreat participants, apologizing for the content of the presentation and stating

that what was shared in the presentation did not reflect the values of Defendants.

73.     Hughes' only response to Plaintiff's complaints during the meeting was, "thanks

for the feedback."

74.     On or about November 18, 2021, following the above, Ferry thanked Plaintiff for

being brave enough to voice concerns with Conklin's presentation, as she was too concerned to

say anything, fearing retaliation.

75.     Defendants failed to remedy, correct or prevent the sex and race discrimination.

76.     Defendants failed to investigate Plaintiff's sex and race discrimination complaints.

77.     After Plaintiff engaged in protected activity, Hughes was increasingly hostile and

dismissive toward her, and treated her differently and worse than before she had engaged in

protected activity and differently and worse than noncomplaining employees.

78.     On January 21, 2022, in a meeting with Hughes, Defendants placed Plaintiff on a

suspension.

79.     During this meeting on January 21, 2022:

    a.  Hughes told Plaintiff that he had already informed the Board that she was

        "suspended pending investigation";

    b.  When Plaintiff asked him what that meant and what she was being investigated

        for, Hughes said that was what he was calling it and he would not talk about it

        at that time;

    c.  Hughes did not provide any legitimate explanation or justification for the

        suspension or the alleged investigation;

    d.  Hughes said that "this" was not working out, and that he wanted to go in another

direction;

e.   Hughes instructed Plaintiff to leave Defendants' premises immediately; and

f.   Hughes threatened to call security if Plaintiff did not leave.

80.   On January 21, 2022, following the above, during a phone call with Rush, he told Plaintiff that he was unaware that she had been sent home and suspended.

81.   During that phone call, Rush stated that Hughes had told the Board that Plaintiff was not always a "team player."

82.   This criticism from Hughes about Plaintiff allegedly not being a "team player" is false and contradicts the 2020 performance review that Plaintiff received from Keeler.

83.   During that same phone call, Rush also told Plaintiff that he and the Board were happy with her performance, and that he would call Hughes to find out what was going on.

84.   On January 21, 2022, following the above, during a phone call with Rossi, she stated that Hughes would be keeping Plaintiff out of work until January 26, 2022, and that Plaintiff was not to attend the Board Meeting on January 25, 2022.

85.   During that phone call, Plaintiff asked Rossi why she was being kept out of work, and Rossi said that Hughes had nothing to point to, just "challenges in [the] relationship."

86.   During that same phone call, Rossi told Plaintiff not to lose sleep trying to figure out what Plaintiff did wrong because there had not been any incident.

87.   During that same phone call, Plaintiff explained to Rossi that this suspension did not comply with Defendants' disciplinary policy, and Rossi agreed. Rossi stated that Plaintiff should expect an email from Hughes, instructing Plaintiff to stay out of work until January 26, 2022.

88.   On January 21, 2022, following the above, Hughes emailed the following: "As

follow up to our conversation earlier today, please continue to remain out of the office and not

working until we have an opportunity to meet again. This includes the board meeting on Tuesday

evening – we will plan to cover the financial report for you. As of now I expect us to meet on

Wednesday and I'll confirm details as soon as I am able. If there are any urgent organizational

needs/time sensitive issues for you or your staff please refer them to me."

89.    Plaintiff received no explanation, including the criteria, as to why she was placed

on a suspension.

90.    Defendants placed Plaintiff on a suspension because of her sex and/or her engaging

in protected activity.

91.    On January 25, 2022, in a text message, Rossi asked Plaintiff to meet with Hughes

and her on January 26, 2022. Plaintiff confirmed that she would attend the meeting and asked what

would be discussed at the meeting. Rossi responded: "Next steps and where we go from here."

92.    On January 26, 2022, during a meeting with Plaintiff, Hughes and Rossi:

a.    Hughes stated that he had decided it would not be possible for him and Plaintiff

to work together in the long run;

b.    Plaintiff was given the following options: resign from her employment with a

six (6) week notice period followed by six (6) weeks of compensation in

exchange for a release of all claims against Defendants and confidentiality, or

resign from her employment and be paid three (3) months of compensation in

exchange for a release of all claims against Defendants and confidentiality;

c.    Plaintiff refused to resign from her employment;

d.    Plaintiff asked why she was being given these options, and whether it was

related to her performance;

e.  In response, Hughes stated that it was not related to her performance, and that Plaintiff's work performance was great, but it was related to interpersonal challenges between Hughes and Plaintiff;

f.  Plaintiff stated that she was surprised by this because this was the first time a discussion on this subject occurred, and that she had received positive feedback from other members of the Senior Team;

g.  Plaintiff stated she believed it was possible to work together with Hughes, as Plaintiff was committed to making the relationship successful;

h.  Plaintiff reiterated that she had never received any feedback other than a glowing written review from Keeler in September 2021, and a written thank you note from Hughes in late December 2021;

i.  Hughes then unjustly criticized Plaintiff's performance;

j.  Hughes stated that he could not trust or work with Plaintiff again, especially since she had complained about him to Rossi in late October 2021;

k.  Plaintiff asked Hughes for a reason why she was suspended, since Plaintiff had still not received any explanation;

l.  Hughes responded by telling her that there actually was no investigation, and that he was only calling it a suspension pending investigation;

m.  Hughes stated that he would consider his and the Plaintiff's ability to work together moving forward, and that the pair would meet again on January 28, 2022; and

n.  Hughes instructed Plaintiff to, in the meantime, return to work as the Chief Financial Officer.

93.    On January 28, 2022, during a meeting with Plaintiff, Hughes and Rossi:

    a.    Hughes stated that he considered Plaintiff's request to continue working at Defendants, but he had a "gut feeling" that it would not work long-term and that he did not want to be having the same conversation in six (6) weeks or six (6) months;

    b.    Plaintiff told Hughes that she disagreed that they could not work together and explained that she felt he was not giving her a chance and that he had never given her a chance;

    c.    Plaintiff stated that she did not think this was the best move for Defendants because Defendants were in challenging times and Plaintiff was the right person to manage the finances;

    d.    Plaintiff was given the following options: resign from her employment with a six (6) week notice period followed by six (6) weeks of compensation in exchange for a release of all claims against Defendants and confidentiality, or resign from her employment and be paid three (3) months of compensation in exchange for a release of all claims against Defendants and confidentiality; and

    e.    Plaintiff refused to resign from her employment.

94.    On January 28, 2022, following the above, in a meeting with Rossi, she told Plaintiff that she had advised Defendants Board that Plaintiff's termination was a "weak" termination, that Defendants did not have a leg to stand on, Hughes did not follow Defendants' disciplinary policy, and that this would not be Human Resources' recommendation on how to handle the situation.

95.    On January 28, 2022, in a memorandum from Rossi, copying Hughes, entitled

"Separation," and dated January 27, 2022, Plaintiff was given "2 strategies for the planned departure from [her] role with [Defendants]." Plaintiff was given the following options: resign from her employment with a six (6) week notice period followed by six (6) weeks of compensation in exchange for a release of all claims against Defendants and confidentiality; or resign from her employment and be paid three (3) months of compensation in exchange for a release of all claims against Defendants and confidentiality. The memorandum stated that the first option "would allow [Plaintiff] the opportunity to exit the organization in a traditional manner," and the second option "would provide [Plaintiff] the opportunity to direct [her] focus on future endeavors."

96.    Plaintiff refused to resign from her employment.

97.    On February 2, 2022, in an email to Hughes, Rossi, Pritchard, Rush, Robert Loughery (male), Vice Chair of Grand View Health Board of Trustees, and Judith Ott (female), Secretary of Grand View Health Board of Trustees, Plaintiff stated the following: "I have reviewed the letter provided to me by you on January 28, 2022 and I reject both options that have been presented. I am not resigning, and I wish to continue my employment at Grand View Health as the Chief Financial Officer. I believe that the suspension and hostility against me are because I am female and made complaints of sex discrimination."

98.    On February 3, 2022, in an email from Rossi, she stated the following: "I have scheduled a meeting for you, me and Doug [Hughes] to discuss next steps tomorrow (Friday) morning at 10am. Please meet us in the Hatfield Station conference room. No need to attend today's Executive Leadership meeting."

99.    On February 4, 2022, during a meeting with Plaintiff, Hughes and Rossi:

    a.    Defendants terminated Plaintiff's employment, effective immediately;

    b.    Rossi stated that Defendants received Plaintiff's above email, rejecting the

options to transition out of Defendants, which left them with the option of terminating Plaintiff's employment immediately;

c. Plaintiff stated that she wished to remain employed with Defendants, and that she felt that this termination was the result of sexism and the discrimination complaints she had recently made;

d. Rossi and Hughes did not respond and did not deny that Plaintiff's termination was due to her sex and her recent protected activity;

e. Plaintiff was told that Defendants would be communicating Plaintiff's termination to her direct reports and other senior leaders that day;

f. Plaintiff was told that her termination had nothing to do with her performance;

g. Plaintiff reiterated that she wanted to continue in her position as Defendants' Chief Financial Officer, and that she felt that this termination was because she was female, because of sexism, and because of the prior discrimination complaints that she had made;

h. Ross and Hughes again ignored Plaintiff's complaints, did not deny the same, and handed Plaintiff a severance agreement offer to pay her three (3) months of compensation in exchange for a release of all claims against Defendants and confidentiality; and

i. Plaintiff refused to sign the severance agreement.

100.    Defendants terminated Plaintiff's employment because of her sex and/or her engaging in protected activity.

101.    Before Plaintiff had engaged in protected activity, Plaintiff had not been suspended or threatened with suspension or termination.

102.    Before Plaintiff engaged in protected activity, Plaintiff had no disciplinary or performance issues throughout her employment.

103.    Before Plaintiff engaged in protected activity, Plaintiff was not told that she had any difficulties being a "team player."

104.    Before Plaintiff engaged in protected activity, Hughes had not told Plaintiff that he did not think they could work together.

105.    Plaintiff was the only employee of Defendants terminated effective February 4, 2022.

106.    Defendants subjected Plaintiff to a hostile work environment, including sexual harassment, because of her sex and/or her engaging in protected activity.

107.    Defendants failed to investigate, remedy, correct or prevent the discrimination and retaliation to which Plaintiff was subjected.

108.    Plaintiff had no opportunity to remain employed with Defendants.

109.    On February 7, 2022, in an email from Hughes to employees of Defendants, he stated that Plaintiff had "left the organization," and that Defendants were in the process of securing an interim Chief Financial Officer while Defendants were conducting a search for a successor Chief Financial Officer.

110.    Defendants replaced Plaintiff with Arthur Anderson (male), Chief Financial Officer.

111.    Plaintiff was more qualified to perform the job duties than the noncomplaining male employee with whom Defendants replaced her.

112.    Defendants' discriminatory and retaliatory conduct and comments have caused Plaintiff emotional distress.

113.    Defendants' discriminatory and retaliatory conduct and comments constitute a continuing violation.

114.    Defendants' comments and conduct evidence a bias against female employees and/or employees who engage in protected activity.

115.    Defendants have an underrepresentation of female employees, especially in high level positions.

116.    By way of example only, as of Plaintiff's termination, only one (1) of Defendants' five (5) Board Leadership members was female, and only one (1) of Defendants' six (6) Board Trustees was female, and Plaintiff was replaced by a male in her Chief Financial Officer role.

117.    The retaliatory conduct set forth herein would discourage a reasonable employee from engaging in protected activity.

118.    Defendants' discriminatory and retaliatory conduct, as alleged herein, was severe or pervasive enough to make a reasonable person believe that the conditions of employment had been altered and that a hostile work environment existed, and made Plaintiff believe that the conditions of employment had been altered and that a hostile work environment existed.

## <u>COUNT I – TITLE VII</u>

119.    Plaintiff incorporates by reference the foregoing paragraphs as if set forth herein in their entirety.

120.    By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendants have violated Title VII.

121.    Defendants acted intentionally and willfully, with malice and/or reckless indifference to Plaintiff's federally protected rights, and with knowledge that their actions violated the law and/or with knowledge that their actions may violate the law, warranting the imposition of

punitive damages.

122.    As a direct and proximate result of Defendants' violations of Title VII, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

123.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

124.    No previous application has been made for the relief requested herein.

## COUNT II – SECTION 1981

125.    Plaintiff incorporates by reference the foregoing paragraphs as set forth herein in their entirety.

126.    By committing the foregoing acts of retaliation against Plaintiff, Defendants have violated Section 1981.

127.    Defendants acted willfully and/or intentionally with malice and/or reckless indifference to Plaintiff's federally protected rights, and Defendants' conduct was especially egregious, warranting the imposition of punitive damages.

128.    As a direct and proximate result of Defendants' violation of Section 1981, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

129.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' retaliatory and unlawful acts unless and until this Court grants the relief requested herein.

130.    No previous application has been made for the relief requested herein.

## COUNT III – PHRA

131.    Plaintiff incorporates by reference the foregoing paragraphs as if set forth herein in

their entirety.

132.    By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendants have violated the PHRA.

133.    As a direct and proximate result of Defendants' violations of the PHRA, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

134.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

135.    No previous application has been made for the relief requested herein.

## **RELIEF**

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendants' unlawful conduct, and specifically prays that this Court grant the following relief to Plaintiff by:

(a) declaring the acts and practices complained of herein to be in violation of Title VII;

(b) declaring the acts and practices complained of herein to be in violation of Section 1981;

(c) declaring the acts and practices complained of herein to be in violation of the PHRA;

(d) enjoining and permanently restraining the violations alleged herein;

(e) entering judgment against Defendants and in favor of Plaintiff in an amount to be determined;

(f) awarding compensatory damages to make Plaintiff whole for all lost earnings, earning capacity and benefits, past and future, which Plaintiff has suffered or may suffer as a result of Defendants' unlawful conduct;

(g) awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasures, which Plaintiff has suffered or may suffer as a result of Defendants' unlawful conduct;

(h) awarding punitive damages to Plaintiff under Title VII and Section 1981;

(i) awarding Plaintiff such other damages as are appropriate under Title VII, Section 1981 and the PHRA;

(j) awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable attorneys' fees; and

(k) granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

CONSOLE MATTIACCI LAW LLC

Dated:    May 31, 2023                    By:    /s/ *Kevin Console*
                                                 Kevin Console, Esquire
                                                 1525 Locust St., 9th Floor
                                                 Philadelphia, PA 19102
                                                 (215) 545-7676

                                                 *Attorney for Plaintiff,*
                                                 *Courtney Coffman*

# Exhibit 1

COMMONWEALTH OF PENNSYLVANIA

GOVERNOR'S OFFICE

PENNSYLVANIA HUMAN RELATIONS COMMISSION

|  |  |
|---|---|
| Courtney Coffman, | : |
|     Complainant | : |
|  | : |
|  | : |
|       v. | : PHRC Case No. 202101900 |
|  | : |
| Grand View Hospital; Grand View | : EEOC No. 17F202260738 |
| Health; Grand View Health Foundation; |  |
| Douglas Hughes, |  |
|     Respondent | : |
|  | : |

## COMPLAINT

## JURISDICTION

1.    Jurisdiction is pursuant to the Pennsylvania Human Relations Act 43 P.S. §§ 951-963.

## PARTIES

2.    The Complainant herein is:

    Courtney Coffman

3.    The Respondent herein is:

    Grand View Hospital; Grand View Health; Grand View Health Foundation
    Office of General Counsel
    700 Lawn Avenue
    Sellersville, PA 18960

    Douglas Hughes
    c/o Grand View Hospital; Grand View Health; Grand View Health Foundation;
    Office of General Counsel
    700 Lawn Avenue
    Sellersville, PA 18960

Received

FEB 2 8 2022

PA Human Relations Commission
Philadelphia Regional Office

COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE
PENNSYLVANIA HUMAN RELATIONS COMMISSION

## COMPLAINT

COMPLAINANT:                                    :
                                                :
**COURTNEY COFFMAN**                            :          Docket No. 202101900
                                                :
v.                                              :
                                                :
RESPONDENTS:                                    :
                                                :
**GRAND VIEW HOSPITAL**                         :
                                                :
and                                             :
                                                :
**GRAND VIEW HEALTH**                           :
                                                :
and                                             :
                                                :
**GRAND VIEW HEALTH FOUNDATION**                :
                                                :
and                                             :
                                                :
**DOUGLAS HUGHES, aider and abettor**           :

1.  The Complainant herein is:

    Name:                    Courtney Coffman

    Address:                 ████████████████████

2.  The Respondents herein are:

    Names:                   Grand View Hospital; Grand View Health; Grand View
                             Health Foundation (collectively, "Respondent Entity");
                             Douglas Hughes, , aider and abettor ("Respondent
                             Hughes")

Address:                        700 Lawn Avenue
                                Sellersville, PA 18960

3.  I, <u>Courtney Coffman</u>, the Complainant herein, allege that I was subjected to unlawful

discrimination because of my sex (female) and unlawful retaliation because of my engaging in

protected activity, as set forth below.

**Discrimination and Retaliation**

A. I specifically allege:

[1]        I was hired by Respondent Entity on or about February 27, 2020.

[2]        I consistently performed my job duties in a highly competent manner, and

received positive feedback.

[3]        I last held the position of Vice President and Chief Financial Officer.

[4]        I last reported to Respondent Douglas Hughes (male), Interim President

and Chief Executive Officer.

[5]        Before reporting to Respondent Hughes, I reported to Jean Keeler

(female), President and Chief Executive Officer, who hired me.

[6]        In January 2020, when I was being interviewed by Respondent Entity,

Respondent Hughes did not attend the first interview with me. Respondent Hughes attended my

second interview, but told me he had no questions for me and no interest in interviewing me.

[7]        After I was hired, I was told that Respondent Hughes wanted the male

candidate to be hired instead of me.

[8]        I was told that Respondent Hughes and Robert Pritchard (male), Board of

Trustees Chair, were upset that I was hired.

[9]        In January 2021, Mary Ann Poatsy (female), then Chair of Finance on

Respondent Entity's Board of Trustees and the only woman on Respondent Entity's Finance

Committee, was replaced by Blair Rush (male), Chair of Respondent Entity's Finance Committee.

[10]     In July 2021, Poatsy (female) was removed from the Board of Trustees and the Finance Committee, replaced by Walter Cressman (male) as a Finance Committee member. Her Board seat remains vacant.

[11]     In July 2021, following the above, Rush told me that Pritchard asked him if he thought I could smile and accept whatever was given or if I should be removed from a call related to my job duties.

[12]     In September 2021, I received a positive performance review from Keeler.

[13]     On September 30, 2021, Keeler (female) was pushed out of her position of President and Chief Executive Officer of Respondent Entity.

[14]     On October 1, 2021, I began reporting to Respondent Hughes.

[15]     Respondent Hughes and Pritchard treated me in a hostile, demeaning, and dismissive manner, differently and worse than male employees were treated.

[16]     I was blamed for things outside of my control.

[17]     I was not provided information relevant and necessary to perform my job duties and responsibilities.

[18]     When I disagreed with Respondent Hughes, he referred to me as "aggressive."

[19]     Respondent Hughes circumvented me and contacted Christopher Mazzie (male), Finance Director, instead of me, for issues that should have been directed to me.

[20]     On October 7, 2021, during a ribbon-cutting ceremony for one of Respondent Entity's new locations, Respondent Hughes invited only male leadership members,

including Bill Bingaman (male), Senior Director of Materials Management, one of my direct reports, to cut the ribbon and be part of the photograph, while excluding the female leadership employees, including me, who were present at the event.

[21]     October 25, 2021, in a meeting with Respondent Hughes, after I had heard that Respondent Entity planned to invite Joe Conklin (male) to present a comedy routine at Respondent Entity's upcoming Board Retreat, I complained that Conklin's presentation would be inappropriate for the workplace due to his sex and race discriminatory statements. Respondent Hughes responded that Conklin's routine was what Pritchard wanted at the Board Retreat. Respondent Hughes told me that I was no longer allowed to work remotely with the same frequency as I had been doing while reporting to Keeler, and that he had been tracking my physical location and tracking the number of days I was in the office. When I asked him how he had been tracking my location, he refused to tell me.

[22]     Following the above, in a meeting with Jan Rossi (female), Vice President of Human Resources, I complained of sex discrimination in connection with Respondent Hughes. I stated that Respondent Hughes told me that he had been tracking my physical location and tracking the number of days I was in the office, and that I believed he was doing the same to force me out because he did not like women, especially women who stood up to him, of which I was one.

[23]     Respondents failed to investigate my sex discrimination complaints.

[24]     Respondents failed to remedy or prevent the sex discrimination at Respondent Entity.

[25]     On November 11, 2021, during an Executive Team Meeting, I objected to the proposal to invite Conklin to the upcoming Board Retreat, due to his sex and race bias. Rossi

asked if Respondent Hughes had any discussions with Conklin, instructing Conklin to keep his routine "clean." Respondent Hughes responded that he was not worried, and that it was what Pritchard wanted.

[26]    On November 12, 2021, during Respondent Entity's Board Retreat, Pritchard and Respondent Hughes scheduled a "surprise guest," Joe Conklin (male). During Conklin's presentation, he engaged in sexist and racist comments and conduct.

[27]    On November 13, 2021, Rush told me that he heard from Respondent Hughes that I was unhappy at Respondent Entity. I responded that I was not unhappy at Respondent Entity.

[28]    On November 18, 2021, during an Executive Meeting led by Respondent Hughes and attended by Rossi, Jane Ferry (female), Chief Medical Officer, Cindy Westphal (female), Chief Nursing Officer, Michael Prasto (male), Assistant Chief Medical Officer, Mark Horne (male), Senior Vice President and Chief Operating Officer, Keith Hammerschmidt (male), Executive Director of the Integrated Delivery Network, Wendy Kaiser (female), Director of Marketing, Renee Acconciamessa (female), Vice President of Physician Practices, and Jane Loveless (female), Vice President and Chief Information Officer, I complained of sex and race discrimination in connection with Conklin's presentation at Respondent Entity's Board Retreat. I complained that the presentation was sexist and racist, was offensive and made me feel uncomfortable, and created a hostile work environment that made women and minorities feel unwelcomed. Rossi, Ferry, and Westphal agreed, and stated that the presentation was inappropriate for the workplace. I stated that I thought a joint statement from Respondent Hughes and the Board should be sent out to all Retreat participants, apologizing for the content

of the presentation and stating that what was shared in the presentation did not reflect the values of Respondent Entity. Respondent Hughes' only response was, "thanks for the feedback."

[29]     On November 18, 2021, following the above, Ferry thanked me for being brave enough to voice my concerns with Conklin's presentation, as she was too concerned to say anything, fearing retaliation.

[30]     Respondents failed to remedy or prevent the sex and race discrimination.

[31]     Respondents failed to investigate my sex and race discrimination complaints.

[32]     After I engaged in protected activity, Respondent Hughes was increasingly hostile and dismissive toward me, and treated me differently and worse than before I had engaged in protected activity and differently and worse than noncomplaining employees.

[33]     On January 21, 2022, in a meeting with Respondent Hughes, Respondents placed me on a suspension. Respondent Hughes told me that he had already informed the Board that I was "suspended pending investigation." When I asked him what that meant and what I was being investigated for, he said that this was what he was calling it and he would not talk about it now. Respondent Hughes said that "this" was not working out, and that he wanted to go in another direction. He instructed me to leave Respondent Entity's premises immediately, and threatened to call security if I did not leave.

[34]     On January 21, 2022, following the above, in a phone call with Rush, he told me that he was unaware that I had been sent home and suspended. He stated that Respondent Hughes had told the Board that I was not always a "team player," which contradicted the 2020 performance review that I received from Keeler. Rush told me that he and

the Board were happy with my performance, and that he would call Respondent Hughes to find out what was going on.

[35]    On January 21, 2022, following the above, in a phone call with Rossi, she stated that Respondent Hughes would be keeping me out of work until January 26, 2022, and that I was not to attend the Board Meeting on January 25, 2022. I asked Rossi why I was being kept out of work, and she said that Respondent Hughes had nothing to point to, just "challenges in []our relationship." Rossi told me not to lose sleep trying to figure out what I did wrong because there had not been any incident. I stated that this process did not comply with Respondent Entity's disciplinary policy, and Rossi agreed. Rossi stated that I should expect an email from Respondent Hughes, instructing me to stay out of work until January 26, 2022.

[36]    On January 21, 2022, following the above, in an email from Respondent Hughes, he stated the following: "As follow up to our conversation earlier today, please continue to remain out of the office and not working until we have an opportunity to meet again. This includes the board meeting on Tuesday evening – we will plan to cover the financial report for you. As of now I expect us to meet on Wednesday and I'll confirm details as soon as I am able. If there are any urgent organizational needs/time sensitive issues for you or your staff please refer them to me."

[37]    I received no explanation, including the criteria, as to why I was placed on a suspension.

[38]    Respondents placed me on a suspension me because of my sex and/or my engaging in protected activity.

[39]    On January 25, 2022, in a text message from Rossi, she asked me to meet with Respondent Hughes and her on January 26, 2022. I confirmed that I would attend the

meeting and asked what would be discussed at the meeting. Rossi responded: "Next steps and where we go from here."

[40]     On January 26, 2022, in a meeting with Respondent Hughes and Rossi, Respondent Hughes stated that he had decided it would not be possible for him and me to work together in the long run. I was given the following options: resign from my employment with a six (6) week notice period followed by six (6) weeks of compensation in exchange for a release of all claims against Respondents and confidentiality; or resign from my employment and be paid three (3) months of compensation in exchange for a release of all claims against Respondents and confidentiality. I refused to resign from my employment. I asked why I was being given these options, and whether it was related to my performance. He stated that it was not, and that my work performance was great, but it was related to interpersonal challenges between us. I stated that I was surprised by this because this was the first time we were having such a discussion, and that I had received positive feedback from other members of the Senior Team. I stated that I believed it was possible for us to work together, as I was committed to making our relationship successful. I reiterated that I had never received any feedback other than a glowing written review from Keeler in September 2021, and a written thank you note from Respondent Hughes in late December 2021. Respondent Hughes then unjustly criticized my performance. Respondent Hughes stated that he could not trust or work with me again, especially since I had complained about him to Rossi in late October 2021. I asked Respondent Hughes for a reason why I was suspended, since I had still not received a reason for the same. He responded that there was no investigation, and that he was only calling it a suspension pending investigation. He stated that he would consider our ability to work together moving

forward, and that we would meet again on January 28, 2022. He instructed me to, in the meantime, return to work as the Chief Financial Officer.

[41]     On January 28, 2022, in a meeting with Respondent Hughes and Rossi, Respondent Hughes stated that he considered my request to continue working at Respondent Entity, but had a "gut feeling" that this would not work long-term. He stated that he did not want to be having the same conversation in six (6) weeks or six (6) months. I told him that I disagreed that we could not work together, and felt that he was not giving me a chance and that he had never given me a chance. I stated that I did not think this was the best move for Respondent Entity because Respondent Entity was in challenging times and I was the right person to manage the finances. I was given the following options: resign from my employment with a six (6) week notice period followed by six (6) weeks of compensation in exchange for a release of all claims against Respondents and confidentiality; or resign from my employment and be paid three (3) months of compensation in exchange for a release of all claims against Respondents and confidentiality. I refused to resign from my employment.

[42]     On January 28, 2022, following the above, in a meeting with Rossi, she told me that she had advised Respondent Entity's Board that my termination was a "weak" termination, that Respondents did not have a leg to stand on, Respondent Hughes did not follow Respondent Entity's disciplinary policy, and that this would not be Human Resources' recommendation on how to handle my situation.

[43]     On January 28, 2022, in a memorandum from Rossi, copying Respondent Hughes, entitled "Separation," and dated January 27, 2022, I was given "2 strategies for the planned departure from [my] role with [Respondent Entity]." I was given the following options: resign from my employment with a six (6) week notice period followed by six (6) weeks of

compensation in exchange for a release of all claims against Respondents and confidentiality; or resign from my employment and be paid three (3) months of compensation in exchange for a release of all claims against Respondents and confidentiality. The memorandum stated that the first option "would allow [me] the opportunity to exit the organization in a traditional manner," and the second option "would provide [me] the opportunity to direct [my] focus on future endeavors." I refused to resign from my employment.

[44]    On February 2, 2022, in an email to Respondent Hughes, Rossi, Pritchard, Rush, Robert Loughery (male), Vice Chair of Grand View Health Board of Trustees, Judith Ott (female), Secretary of Grand View Health Board of Trustees, I stated the following: "I have reviewed the letter provided to me by you on January 28, 2022 and I reject both options that have been presented. I am not resigning, and I wish to continue my employment at Grand View Health as the Chief Financial Officer. I believe that the suspension and hostility against me are because I am female and made complaints of sex discrimination."

[45]    On February 3, 2022, in an email from Rossi, she stated the following: "I have scheduled a meeting for you, me and Doug to discuss next steps tomorrow (Friday) morning at 10am. Please meet us in the Hatfield Station conference room. No need to attend today's Executive Leadership meeting."

[46]    On February 4, 2022, in a meeting with Respondent Hughes and Rossi, Respondents terminated my employment, effective immediately. Rossi stated that they received my above email, rejecting the options to transition out of Respondent Entity, which left them with the option of terminating my employment immediately. I stated that I wished to remain employed with Respondent Entity, and that I felt that this termination was the result of sexism and the discrimination complaints I had previously made. They ignored the same, and stated that

they would be communicating my termination my direct reports and other senior leaders that day. They told me that my termination had nothing to do with my performance. I reiterated that I wanted to continue in my position as Respondent Entity's Chief Financial Officer, and that I felt that this termination was because I was female, because of sexism, and because of the prior discrimination complaints that I had made. They again ignored my complaints and handed me a severance agreement offer to pay me three (3) months of compensation in exchange for a release of all claims against Respondents and confidentiality. I refused to sign the severance agreement.

[47]     Respondents terminated my employment because of my sex and/or my engaging in protected activity.

[48]     Before I had engaged in protected activity, I had not been suspended or threatened with suspension or termination.

[49]     Before I engaged in protected activity, I had no disciplinary or performance issues throughout my employment.

[50]     I was the only employee at Respondent Entity who was terminated effective February 4, 2022.

[51]     Respondents subjected me to a hostile work environment, including sexual harassment, because of my sex and/or my engaging in protected activity.

[52]     Respondents failed to remedy or prevent the sex and race discrimination and retaliation at Respondents.

[53]     I had no opportunity to remain employed with Respondent Entity.

[54]     On February 7, 2022, in an email from Respondent Hughes to employees, he stated that I had "left the organization," and that Respondents were in the process of securing

an interim Chief Financial Officer while Respondents were conducting a search for a successor Chief Financial Officer.

[55]     Respondents replaced me with Stephen Muravsky (male), Interim Chief Financial Officer. I was more qualified to perform my job duties than the noncomplaining male employee with whom Respondents replaced me.

[56]     Respondents' sex discriminatory and retaliatory conduct and comments have caused me emotional distress.

[57]     Respondents' sex discriminatory and retaliatory conduct and comments constitute a continuing violation.

[58]     Respondents' comments and conduct evidence a bias against female employees and/or employees who engage in protected activity.

[59]     Respondents have an underrepresentation of female employees, especially in high level positions.

[60]     Only one (1) of Respondents' five (5) Board Leadership members is female, and only one (1) of Respondents' six (6) Board Trustees is female.

**B.** Based on the aforementioned. I allege that Respondents have discriminated against me because of my sex (female) and retaliated against me because of my engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e. *et seq.* ("Title VII"), the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA"). I alleged that Respondents' conduct has also violated 42 US Code § 1981 ("1981").

4.     The allegations in Paragraph 3 hereof constitute unlawful discriminatory practices in violation of:

   **X**      **Pennsylvania Human Relations Act (Act of October 27, 1955, P.L.**

**744, as amended) Section 5 Subsection(s):**   **(a): (d); (e)**

\_\_\_\_      Section 5.1 Subsection(s) _____

\_\_\_\_      Section 5.2 Subsection(s) _____

\_\_\_\_      Pennsylvania Fair Educational Opportunities Act (Act of July 17. 1961.

P.L. 766, as amended) Section 4 Subsection(s) _____

5.    Other action based upon the aforesaid allegations has been instituted by the

Complainant in any court or before any other commission within the Commonwealth of

Pennsylvania as follows:

   **X**      **This charge will be referred to the EEOC for the purpose of dual**

**filing**.

6.    The Complainant seeks that Respondents be required to:

(a) Make the Complainant whole.

(b) Eliminate all unlawful discriminatory practice(s) and procedure(s).

(c) Remedy the discriminatory effect of past practice(s) and procedure(s).

(d) Take further affirmative action necessary and appropriate to remedy the violation

    complained of herein.

(e) Provide such further relief as the Commission deems necessary and appropriate.

## VERIFICATION

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 P.A.C.A. Section 4904, relating to unsworn falsification to authorities.


02/28/2022
_____
(Date Signed)

_____
(Signature)    Courtney Coffman

# Exhibit 2

EEOC Form 161-B (01/2022)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To:  **Courtney Coffman**

From:  **Philadelphia District Office**
**801 Market St, Suite 1000**
**Philadelphia, PA 19107**

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **17F-2022-60738** | **Damon Johnson,** <br> **State, Local & Tribal Program Manager** | **(267) 589-9722** |

*(See also the additional information enclosed with this form.)*

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

More than 180 days have passed since the filing of this charge.

The EEOC is terminating its processing of this charge.

Please retain this notice for your records.

On Behalf of the Commission:

Digitally Signed By: Karen McDonough
3/8/2023

Enclosures(s)

**Karen McDonough**
**Deputy District Director**

cc:  **For Respondent**
Thomas G Collins
Buchanan Ingersoll & Rooney, PC
409 North Second Street Suite 500
Harrisburg, PA 17101

**For Charging Party**
Emily R Derstine Friesen
Console Mattiacci Law LLC
1525 Locust Street
Philadelphia, PA 19102